UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARLENA MILLS, DAVID MILLS, and )
JULIA MILLS, )
)
    *Plaintiffs*, )
)
v. ) No. 3:15-cv-552-PLR-HBG
)
BLUECROSS BLUESHIELD OF )
TENNESSEE, INC., )
)
    *Defendant*. )

## MEMORANDUM OPINION AND ORDER

Before the Court are three motions. First is a motion for judgment on the pleadings filed by BlueCross BlueShield of Tennessee, Inc. Second is BlueCross's motion to strike the amended complaint filed by the Millses. Last is the Millses' motion for leave to refile their amended complaint. For the following reasons, the motion to strike is granted, the motion to dismiss is granted in part and denied in part, and the motion to amend is granted in part and denied in part.

I

A

Marlena Mills lives in Memphis with her parents, David and Julia. Marlena suffers from mental-health issues and is insured by BlueCross. She purchased her BlueCross insurance plan on a state exchange set up by the Affordable Care Act. She has used this plan for in-network and out-of-network mental-health treatment.

1

In June 2015, Marlena moved from Memphis to Knoxville. While there, her mental health worsened. Marlena and her parents decided that she needed inpatient care, and they considered her in-network and out-of-network options. They concluded that the best facility for Marlena was Pasadena Villa, an out-of-network treatment center located in Pigeon Forge.

Because Pasadena Villa was outside Marlena's plan, she would have to pay all costs out of pocket. The only way to avoid this was for BlueCross to give Marlena prior authorization to be treated there. So David began trying to get prior authorization.

This process proved daunting. From October 31 until November 16, David strove to get prior authorization. Instead, he received conflicting information, had his request for prior authorization shuttled among several departments, and ran up against the slowness of large organizations. Meanwhile, Marlena entered Pasadena Villa.

B

Fed up with David's inability to get prior authorization and worried about the out-of-pocket expenses for Marlena's treatment, the Millses sued in Knox County Chancery Court on November 16, 2015. BlueCross removed to this Court a month later and filed its answer.

In March 2016, BlueCross moved for judgment on the pleadings. The Millses responded by filing an amended complaint. BlueCross replied with a motion to strike the amended complaint, and the Millses moved for leave to refile it. The Court will now consider these three motions.

## II

First is BlueCross's motion to strike the amended complaint. BlueCross filed its answer to the original complaint in December 2015. In March 2016, the Millses filed an amended complaint without requesting permission from the Court. BlueCross argues that the Millses needed permission.

BlueCross is correct. If a pleading requires a response, a party may amend that pleading without the court's permission within twenty-one days of serving it. FED. R. CIV. P. 15(a)(1)(A). And if that party then receives a responsive pleading or a motion to dismiss, a motion for a more definite statement, or a motion to strike, the party has another twenty-one days to amend the pleading without the court's permission. *Id.* 15(a)(1)(B).[1] If both deadlines have passed, the party may amend the pleading only with the court's permission. *Id.* 15(a)(2).

Both deadlines passed before the Millses filed their amended complaint. First, they did not file it within twenty-one days of serving it on BlueCross. BlueCross removed the case to this Court on December 14, 2015. The Millses filed their amended complaint on March 17, 2016.

Second, the Millses did not file their amended complaint within twenty-one days of receiving a responsive pleading from BlueCross. Answers count as responsive pleadings. *United States ex rel. Wall v. Circle C Constr., L.L.C.*, 697 F.3d 345, 350 (6th Cir. 2012). BlueCross filed its answer on December 21, 2015. The Millses filed their amended complaint three months later.

The Millses did not file their amended complaint within the periods set out in Rule 15(a)(1). The amendment was therefore untimely. BlueCross's motion to strike the amended complaint is **GRANTED**. The Millses' request for permission to amend their complaint is considered below.

---

[1] This does not include a motion for judgment on the pleadings under Rule 12(c). *See id.* (expressly including only motions under Rule 12(b), (e), and (f)).

III

A

When reviewing a motion for judgment on the pleadings, the court looks at all the pleadings filed in the case. *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Motions for judgment on the pleadings under Rule 12(c) are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Id.* The complaint will survive a motion to dismiss only if, looking at the pleadings, the plaintiff states a facially plausible claim for relief. *Id.*

To determine whether the plaintiff has stated a facially plausible claim, the Court takes a two-step approach. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, it separates the pleadings' factual allegations from their legal conclusions. All factual allegations, and only factual allegations, are taken as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Second, the Court asks whether these facts amount to a plausible claim for relief. *Id.* at 555. The plaintiff does not need to make detailed factual allegations, but the plaintiff must do more than simply recite the elements of the offense. *Id.* Specifically, the plaintiff must plead facts permitting a reasonable inference that the defendant is liable for the alleged conduct. *Id.* If this is not done, the claim will be dismissed. *Id.* at 570.

B

Judgment on the pleadings will not be granted, however, if the opposing party offers amended pleadings that state a facially plausible claim. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). If this occurs, the court will allow the other party to amend the pleadings. *Id.* Conversely, amendment will not be allowed if doing so would be futile. *Id.* So the Court will allow all of the Millses' amendments that withstand BlueCross's motion for judgment on the pleadings. *See Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014).

4

## IV

### A

BlueCross first argues that the Millses cannot bring this suit because they have not exhausted their contractual remedies. According to BlueCross, the Millses must secure prior authorization, file a claim, and undergo the grievance procedure outlined in the policy agreement. Only after that can the Millses sue.

None of these steps bars the Millses' suit. First, they can sue even though they did not get prior authorization. This is because prior authorization was impossible by the time the Millses brought their action. Marlena's BlueCross policy defines *prior authorization* as "A review conducted by Us, prior to the delivery of certain services, to determine if such services will be considered Covered Services." [D. 6 at 42]. Prior authorization became impossible once Marlena entered Pasadena Villa. It thus does not bar this suit. Were the Court to find otherwise, an insurer might delay (innocently or not) until prior authorization was impossible, and then raise that failure as a defense.

Second, the Millses may sue even though they did not file a claim. This is related to their failure to obtain prior authorization: Even if the Millses did file a claim and BlueCross accepted it, they would not be reimbursed as much as they would have had they gotten prior authorization. Marlena's policy notes, "Some Covered Services must be Authorized by BlueCross in order to be paid at the Maximum Allowable Charge without Penalty". [*Id.* at 13]. A *penalty*, in turn, is "A reduction in benefit amounts paid by Us as a result of failure to comply with Plan requirements such as failing to obtain Prior Authorization . . . ." [*Id.* at 41]. Marlena's treatment required prior authorization, but the Millses did not get it. [*Id.* at 45]. Thus any claim they file will incur a penalty, preventing them from receiving maximum reimbursement.

To be sure, the policy states that no customer may sue until sixty days after a claim has been filed. But because the Millses cannot receive maximum reimbursement anyway, filing a claim would be futile. As a result, the Millses' failure to file a claim does not bar this suit. *See Glover v. St. Louis-S.F. Ry. Co.*, 393 U.S. 324, 330 (1969) (recognizing one of "the most obvious exceptions to the exhaustion requirement—the situation where the effort to proceed formally with contractual or administrative remedies would be wholly futile"); *Chapman v. United Auto Workers Local 1005*, 670 F.3d 677, 683 (6th Cir. 2012).

Finally, the Millses do not need to go through the grievance procedure outlined in the policy. BlueCross contends that this procedure is mandatory. The specific language states that the grievance procedure is "intended to provide a fair, quick and inexpensive method of resolving any and all disputes with us." [D. 6 at 22]. The issue here is whether *a method* means the *only* method.

The answer is no. *A method* means that the grievance procedure is one way to resolve disputes, but not the only way. This flows from the ambiguous nature of *a*, combined with principles of contract interpretation.

*A method* is ambiguous. Marlena's policy is an insurance contract. State law governs interpretation of insurance contracts. *Transamerica Inc. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995). In Tennessee, insurance contracts are governed by the standard rules of contract interpretation. *Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007). And the goal of these rules is to determine the parties' intent, based on the ordinary meaning of the contract's language. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011).

The ordinary meaning of *a* is ambiguous. Sometimes it points to nonspecific things, as in "I want a basketball." Sometimes it points to specific things, as in "I see a basketball." *See* THE CHICAGO MANUAL OF STYLE § 5.70–71 (16th ed. 2010). Ordinarily, though, it indicates something

nonspecific. *See id.* § 5.70. Thus, *a method* in the policy indicates that the grievance procedure is just one way to resolve disputes, not the only way.

This interpretation is backed by rules of construction. At a broad level, "ambiguous contract provisions will be construed against the drafter of the contract." *West v. Shelby Cty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014). BlueCross drafted the contract. And in particular, "contracts of insurance are strictly construed in favor of the insured, and if the disputed provision is susceptible to more than one plausible meaning, the meaning favorable to the insured controls." *Garrison v. Bickford*, 377 S.W.3d 659, 664 (Tenn. 2012). Marlena benefits by having multiple avenues of relief available for resolving her insurance disputes. The grievance procedure outlined in her policy, then, is not the only avenue.

In support of its argument, BlueCross cites *Davis v. Tennessee Rural Health Improvement Ass'n*, No. 12C1403 (Davidson County Cir. Ct. Feb. 27, 2015). In *Davis*, the court held that the plaintiff could not sue his insurer. *Davis*, No. M2015-573-COA-R3-CV, 2015 WL 7748636, at *1 (Tenn. Ct. App. Nov. 30, 2015).[2] The court reasoned that the plaintiff first had to follow the grievance procedure outlined in his policy. *Id.* at *2. But the crux of the court's decision was this language in the policy: "This Procedure is the exclusive method of resolving any dispute . . . ." *Id.* at *4 (alteration in original). Marlena's policy contains no such language. *Davis* thus does not bear on this case.

Granted, BlueCross does cite other cases to argue that the Millses must exhaust their contractual remedies. But most of these involved insurance policies covered by ERISA, which requires an insured to exhaust her administrative remedies before suing her insurer. *See Brigolin v. BlueCross BlueShield of Mich.*, 516 F. App'x 532, 534 (6th Cir. 2013) (unpublished); *Ravencraft v.*

---

[2] The trial-court decision is not publicly available.

7

Case 3:15-cv-00552-PLR-HBG   Document 34   Filed 01/09/17   Page 7 of 13   PageID #: 431

*UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000); *Productive MD, LLC v. Aetna Health, Inc.*, 857 F. Supp. 2d 690, 694 (M.D. Tenn. 2012).

Marlena's policy is not covered by ERISA. She purchased her individual plan on a health-insurance exchange set up by the Affordable Care Act. ERISA does not apply to these plans. *See* 29 U.S.C. §§ 1002(1), 1003(a); *Productive MD, LLC*, 857 F. Supp. 2d at 694 n.6. There is no statutory requirement that she undergo the grievance procedure before suing BlueCross.

The rest of the cases that BlueCross cites involve contractual limitations periods. *See Brick Church Transmission, Inc. v. S. Pilot Ins. Co.*, 140 S.W.3d 324, 327 (Tenn. Ct. App. 2003); *Certain Underwriters at Lloyd's of London v. Transcarriers, Inc.*, 107 S.W.3d 496, 497 (Tenn. Ct. App. 2002). None is at issue here.

BlueCross contends that the Millses cannot sue without first getting prior authorization, filing a claim, and going through the grievance procedure. But any efforts to secure prior authorization became futile once Marlena entered Pasadena Villa. And even if the Millses filed a claim for Marlena's treatment, they would be unable to receive maximum reimbursement. Finally, the grievance procedure is not the sole dispute-resolution procedure. Marlena's policy does not prevent the Millses from filing this suit.

B

BlueCross next argues that the Millses have failed to state a claim for breach of the implied covenant of good faith and fair dealing. The Millses claim that BlueCross has breached the covenant in several ways. BlueCross contends that the Millses allege a tort for breaching the duty of good faith, which Tennessee law does not recognize.

8

The Court sides with the Millses. Under Tennessee law, there is no standalone claim for breach of good faith. *See, e.g.*, *LSREF2 Baron, LLC v. Colony Park P'ship*, No. 3:13-cv-513-TAV-HBG, 2014 WL 37535725, at *6–7 (E.D Tenn. July 28, 2014) (Varlan, C.J.). To be sure, one can bring a contract claim for breach of the implied covenant of good faith. *See Solomon v. First Nat'l Bank of Nashville*, 774 S.W.2d 935, 945 (Tenn. Ct. App. 1989). But Tennessee does not recognize breach of good faith as a standalone tort. *Id.* The question is whether the Millses allege breach of contract or a standalone tort.

The Millses allege breach of contract. The elements for a breach claim are (1) the existence of a contract, (2) nonperformance on that contract amounting to breach, and (3) damages caused by the breach. *Ingram v. Cedant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006). The Millses allege the existence of a contract, namely, Marlena's insurance policy. They also allege that BlueCross has failed to set up certain procedures and release certain information. This amounts to a claim that BlueCross has failed to perform on Marlena's insurance policy to such a degree that it has breached that policy. Finally, the Millses allege that, because of BlueCross's nonperformance, they had to pay out of pocket for the entire cost of Marlena's treatment at Pasadena Villa. They have stated a plausible claim for breach of the covenant of good faith.

The Millses' original breach claim survives BlueCross's motion for judgment on the pleadings. And their amended complaint makes the same allegations, so it also survives BlueCross's motion. BlueCross's motion to dismiss the Millses' breach claim is **DENIED**. The Millses' motion to amend this part of their complaint is **GRANTED**.

## C

Next, BlueCross contends that the Millses have failed to state a claim for fraudulent concealment. The Millses claim that BlueCross has fraudulently concealed the fee schedule it uses to pay out-of-network providers. BlueCross argues that the Millses have failed to allege elements of their claim.

BlueCross is correct. "The tort of fraudulent concealment is committed when a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998). As a matter of law, the Millses have not shown duty.

The Millses have not shown that BlueCross had a duty to disclose the fee schedule. The duty to disclose arises in three situations: (1) where the parties have a fiduciary relationship, (2) where the contract is fiduciary in nature, and (3) where the parties have a confidential relationship. *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 571 (6th Cir. 2003) (quoting *Domestic Sewing Mach. Co. v. Jackson*, 83 Tenn. 418, 425 (1885)). The Millses do not allege a fiduciary relationship or contract. That leaves only the possibility that they and BlueCross have a confidential relationship.

The Millses have not shown this. A confidential relationship exists when one party places confidence in the other, making the other party dominant and empowering it to exercise dominion over the weaker party. *Id.* The Millses do not allege that BlueCross exercised dominion over them. BlueCross was under no duty to disclose the fee schedule. Its motion for judgment on the pleadings as to this claim is **GRANTED**. And the Millses' amended complaint does not allege duty, so amendment would be futile. Their claim of fraudulent concealment is **DISMISSED with prejudice**.

D

BlueCross also asserts that the Millses have failed to state a claim for anticipatory breach of contract. According to the Millses, BlueCross's refusal to disclose its fee schedule guarantees that BlueCross will not properly reimburse them. BlueCross maintains that this does not constitute an anticipatory breach of contract.

The Court agrees with BlueCross. A party can repudiate a contract in two ways: (1) by committing an act that renders it unable to perform, or (2) through words and conduct that amount to a "total and unqualified refusal to perform the contract." *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007). BlueCross has not acted in a way making it unable to perform—in fact, it's BlueCross's alleged *failure* to act that sparked this suit. And refusing to disclose the fee schedule does not amount to a total and unqualified refusal to honor Marlena's policy.

The Millses have not properly alleged anticipatory breach. BlueCross's motion for judgment on the pleadings on this claim is **GRANTED**. The Millses do not raise this claim again in their amended complaint. As a result, their anticipatory-breach claim is **DISMISSED with prejudice**.

E

Finally, BlueCross contends, the Millses have failed to state a claim for violating the Affordable Care Act and the Mental Health Parity and Addiction Equity Act. The Millses claim that BlueCross's failure to provide an in-network behavioral residential treatment facility violates these Acts. BlueCross argues that the Millses have failed to state a claim. It also asserts that no private right of action exists under either Act.

The Court is convinced by BlueCross's second argument. Customers of individual plans cannot sue to enforce the Affordable Care Act or the MHPAEA. The Affordable Care Act imposed

11

Case 3:15-cv-00552-PLR-HBG   Document 34   Filed 01/09/17   Page 11 of 13   PageID #: 435

new requirements on plans offered on state health-insurance exchanges. *See* 42 U.S.C. § 300gg-1 to -28. It expressly left enforcement of these requirements to the states and the Secretary of Health and Human Services, not individuals. *See id.* § 300gg-22. And if Congress had meant to provide a private right of action, then it could have done so as it has with insurance plans subject to ERISA. *See* 29 U.S.C. § 1132(a)(1). This implies that there is no private right of action to enforce certain insurance-plan requirements imposed by the Affordable Care Act. *See Warren Pearl Contr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 n.2 (S.D.N.Y. 2009) (reaching the same conclusion). This includes the requirement that plans offered on exchanges follow the MHPAEA. 42 U.S.C. § 300gg-26; 45 C.F.R. § 156.115(a)(3). The Millses, then, cannot sue to enforce the MHPAEA provisions of the Affordable Care Act.

Likewise, there is no private right of action to enforce the MHPAEA itself. It does not contain an enforcement provision. *See* Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, Pub. L. No. 110-343, §§ 511–512, 122 Stat. 3765, 3881–93. Instead, the MHPAEA is inserted into other laws, and those laws have enforcement provisions. *See* 29 U.S.C. § 1185(a) (ERISA); *id.* § 1132(a) (civil enforcement); 42 U.S.C. § 300gg-26 (ACA); 45 C.F.R. § 156.115(a)(3) (same); 42 U.S.C. § 300gg-22 (enforcement). Thus, a plaintiff who sues for violations of the MHPAEA must follow the procedures outlined in the larger law that she thinks has been violated. The Millses cannot sue directly under the MHPAEA.

Because no private right of action exists under either the Affordable Care Act of the MHPAEA, BlueCross's motion to dismiss these claims is **GRANTED**. And the Millses' amended complaint does not materially differ from the original on these claims. Their claims under the Affordable Care Act and MHPAEA are **DISMISSED with prejudice**.

## V

For these reasons, BlueCross's motion to strike is **GRANTED**. Its motion for judgment on the pleadings is **DENIED** as to the breach claim and **GRANTED** as to all others. The Millses' motion to amend their complaint is **GRANTED** as to the breach claim and **DENIED** as to all others. The Millses' claims for fraudulent concealment, anticipatory breach of contract, and failure to comply with the Affordable Care Act and MHPAEA are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

*/s/ Pamela L. Reeves*
**UNITED STATES DISTRICT JUDGE**